UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABS BREAKBULK SERVICES GMBH,

                Plaintiff,

-against-

TOTALMAR NAVIGATION CORP.

                Defendant

**ECF CASE**

**08 CV 4997 (JSR)**

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A REDUCTION IN THE AMOUNT OF SECURITY

**LAW OFFICES OF RAHUL WANCHOO**
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:   (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

Of Counsel:

Rahul Wanchoo, Esq.

## PRELIMINARY STATEMENT

This matter involves a claim by Plaintiff, ABS Breakbulk Services GmbH ("ABS") against Defendant, Totalmar Navigation Corp. ("Totalmar") for damages for an alleged breach of a maritime Contract of Affreightment ("COA"). The thrust of ABS' claim is that Totalmar, inter alia, elected to exercise its option for four additional shipments but failed to provide cargoes for these shipments during January 2008. ABS is claiming that as a consequence of Totalmar's alleged breach of the COA it has suffered a loss of profit on each of the four option shipments amounting to $4,636,241.76 based on a notional profit of $1,159,060.44 per voyage.

The merits of this matter are subject to arbitration at London under English law, and are not before this Court. Instead, this action is ancillary to the London arbitration proceedings and was brought by ABS for the purpose of obtaining security pursuant to Rule B. Defendant, Totalmar hereby moves for a reduction in the amount of security pursuant to Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

## FACTS

Although the merits of this matter are not before the Court, a brief outline of the relevant background facts remains necessary. We also respectfully refer the Court to the facts set forth in the accompanying declaration of Rahul Wanchoo dated August 1, 2008 (Wanchoo Decl.).

Pursuant to a COA dated December 7, 2007, Totalmar agreed to charter vessels from ABS for two definite shipments with the option for four additional shipments between Shanghai, China and Maracaibo, Venezuela. Wanchoo Decl., Ex. 1 ¶6; Ex. 3 at 1-8. Pursuant to the COA, Totalmar nominated the first shipment which was performed by the M.V. MARJATTA. Totalmar also nominated the second shipment which was performed by M.V. GO STAR. For

the first two shipments ABS claims that it owed a balance of $42,192.21 for dead freight and tally expenses[1]. Wanchoo Decl., Ex. 1 ¶10. With respect to the four option shipments, while Totalmar did exercise its option for the first of the four shipments, it was unable to provide any cargo for this shipment because of the breach by its sub-charterer, ATN Industries Inc. ABS contends that by electing to exercise the first of the four additional shipments, Totalmar was allegedly committed to provide cargo for the remaining three shipments (shipments 4, 5 and 6) for lifting during January 2008. While the merits of that claim are to be decided by the London arbitrators, Totalmar respectfully submits that ABS' damages for its alleged loss of profit on the four option shipments in the amount of $4,636,241.76 is grossly overstated.

ABS has commenced arbitration proceedings against Totalmar in London and has submitted its Claim Submissions to the arbitrators on July 3, 2008. See Wanchoo Decl., Ex. 3.

## ARGUMENT

### THE SECURITY DEMANDED BY ABS SHOULD BE REDUCED

As discussed below, there is good cause for determining that the amount of security demanded by ABS in its application for a Rule B attachment for its alleged lost profit on the four optional voyages is vastly overstated and accordingly should be reduced in keeping with Rule E(6).

Rule E(6) provides as follows:

> Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given.

Furthermore, ABS bears the burden of proof as to why the attachment should not be reduced. Rule E(4)(f) provides as follows:

---

[1] Totalmar does not seek a reduction in the amount of security for ABS' claim of dead freight and tally expenses stated in its Verified Complaint in the amount of $42,192.21.

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest attachment should not be vacated or other relief granted consistent with these rules.

In these proceedings, ABS must demonstrate that the amount requested to be attached can be justified, otherwise the Court should reduce the amount of security given.

1. **ABS' Claim of "Lost Profit" is Grossly Exaggerated**

In calculating its claim of $4,636,241.76 for lost profit on the four shipments, ABS assumes that it stood to turn a profit of $1,159,060.44 per voyage. Wanchoo Decl., Ex.3 ¶ 15. ABS multiplies this figure by 4, the four option shipments to arrive at a total sum of $4,636,241.76. ABS' calculation in support of its lost profit claim is clearly flawed as it fails to give credit to Totalmar for any profit made on the substitute voyage or voyages and/or show that it had in fact time chartered suitable vessels to perform its obligation under the COA.

Pursuant to the COA between ABS and Totalmar, freight was payable at $103 per cubic meter free in out stowed, lashed and dunnaged. Wanchoo Decl., Ex. 3 at 6. Based on the COA freight rate ABS calculates a gross income of $3,989,808.00 on a notional voyage from Shanghai to Maracaibo. Id. at 36. Against this gross income, ABS has deducted certain expenses saved of $2,853,497.56 to arrive at a profit of $1,159,060.44 per voyage. Id. However, ABS has not given credit to Totalmar for any profit that it made on the third option shipment. Similarly, ABS has not provided any evidence to show that it had in fact time chartered suitable vessels to perform the option shipments 4, 5 and 6. In the absence of such evidence, ABS' claim for alleged lost profit of $1,159,060.44 based on shipment No 3 is entirely speculative and grossly exaggerated.

4

The principles involved in calculating owners' damages for charterers' cancellation of the charter are well settled. As the COA is governed by English law, we respectfully refer the Court to the English case of <u>SIB International SRL v. Metallgesellschaft Corp.</u>, [1989] 1 Lloyd's Rep 361 (Court of Appeal 1988) for a discussion of the damages awarded to the owners following charterers' cancellation of the charter. <u>See</u> Wanchoo Decl., Ex. 4. As stated by Lord Justice Staughton:

> The owners are entitled to be placed in the same position, financially as they would have enjoyed if the contract had not been broken. <u>That involves a comparison of the money they would have earned, less expenses, on the contract voyage with the money they in fact earned, less expenses, on the substitute voyage.</u>

<u>Id.</u> (emphasis added). In that case the Court of Appeals held that owners' claim for lost profit was "extinguished by the charterers' entitlement to credit, at the same [market] rate, for the slightly longer period when the notional voyage overlapped the substitute voyage". Id. at 10. In the present case, ABS has not provided any evidence as to the "market" rate to enable the Court to determine whether it has suffered any lost profit on the four option shipments.

ABS' claim of "lost profit" is grossly overstated. The amount of security which ABS should be permitted to retain in support of its lost profits claim must be reduced to the amount of ABS' <u>actual</u> lost profits for the four shipments claimed. ABS should be required to demonstrate its actual lost profits, otherwise, the security required to be posted by Totalmar should be reduced to no more than ABS' claim for dead freight and tally expenses in the amount of $42,192.21. Wanchoo Decl., Ex.1 ¶ 10.

2. **The Amount of Security Which May Be Awarded For interest and Fees Should be Similarly Be Reduced.**

ABS' Verified Complaint sought security for interest at the rate of 8.5%, compounded quarterly over a period of three years on the principal sum $4,678,434.07. As the principal sum of ABS' claim must be reduced to reflect the true amount of the lost profits claim, the amount of security for interest on the principal damage claim must also be reduced.

Likewise, the amount permitted for security in respect to ABS' attorney's fees and arbitrator's fees in London must also be proportionately reduced.

## CONCLUSION

For all the foregoing reasons, Totalmar respectfully submits that the attachment should be reduced, to reflect ABS's true lost profit claim.

Dated: New York, New York
August 1, 2008

                                      **LAW OFFICES OF RAHUL WANCHOO**
                                      Attorneys for Defendant

                      By: _Rahul Wanchoo_ (signature)
                                      Rahul Wanchoo (RW-8725)