UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ABS BREAKBULK SERVICES GMBH,

                Plaintiff,

                                            08 CV 4997 (JSR)

       v.

TOTALMAR NAVIGATION CORP.,

                Defendant.
----------------------------------------------------------------X

### DECLARATION OF MARK TERENCE O'NEIL IN OPPOSITION TO DEFENDANT'S MOTION FOR A REDUCTION IN THE AMOUNT OF SECURITY

MARK TERENCE O'NEIL, pursuant to 28 U.S.C. § 1746, hereby declares and states under penalty of perjury:

1. I am a partner in the London office of law firm Reed Smith Richards Butler LLP, counsel for the Plaintiff, ABS Break Bulk Services GmbH ("ABS Breakbulk") in England. I am admitted to practice in England by the Law Society of England & Wales and have legal experience in maritime and commercial law in the U.K. I make this declaration, in response to the motion of the Defendant, Totalmar Navigation Corp ("Totalmar") for a reduction in the amount of security, based upon my own knowledge and documents provided to me by ABS Breakbulk.

2. In particular I have been asked to respond on the points of English law raised in the Declaration of Rahul Wanshoo, Esq.'s Declaration in Support of Motion to Reduce Maritime Attachment dated 1 August 2008.

3. I set out below an explanation on how the quantum of ABS Breakbulk's claim in the London arbitration proceedings has been calculated under English law, in order to show that the amount of security sought under the Rule B attachment appropriately reflects the level of ABS Breakbulk's claim.

**Basic Principles Under English Law**

4. First I consider that it is necessary to set out the basic principles of English law to establish how damages are calculated.

5. In *Hadley v Baxendale* [1854] 9 EXCH 341, it was established that in relation to breaches of contract, an innocent party is entitled to recover from the party in breach those losses that may (i) fairly and reasonably be considered as arising naturally, (i.e. according to the usual course of things) from such breach of contract itself, or (ii) reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as a probable result of the breach of it. To be recoverable under either of these two limbs, the test is to show that losses must have been "liable to result" and "not unlikely".

6. In the context of the *Hadley v Baxendale* test when dealing with more unusual types of losses which would fall within the second limb, the claimant must show that the party in breach had actual knowledge at the time that the relevant contract was entered into that the particular losses being claimed were likely to result from the breach in question. This is still the leading case on damages.

7. Turning now to consider claims for loss of profits, in *Hall v Pim [1928] 30 Lloyd's Rep. 159*, on recovery of losses under sub-contracts, it was held that the level of damages should be the difference between the price at which they had bought the cargo and the price at which they had resold it, rather than the difference between the contract price and the market value of the cargo at the date of the breach. As a result the innocent party was entitled to recover lost profits.

8. Finally, in *Phoebus D Kyprianou Coy v WM H Pim J&R and Co [1977] 2 Lloyd's Rep. 570*, it was held that the party in breach, even though it was in breach before the end of the shipment period, was not entitled to have damages assessed by reference to the earlier date of the breach (which was more favourable to it) but instead the innocent party was entitled to have damages assessed by reference to the end of the respective shipment period.

**Applying English Case-law to the facts**

9. Clause 25 of the Contract of Affreightment ("COA") provides that *"then four shipments in January 2008 in charterers' option with lay days to be agreed mutually between the parties. All nominations to be latest five days prior to start of first lay day"*.

10. The losses incurred by ABS Breakbulk fall within the second limb of *Hadley v Baxendale*. Since Totalmar declared its option to fix four further vessels and then failed to nominate them, ABS Breakbulk suffered losses and are entitled to any lost profits for the entire shipment period.

11. If those losses had not been in Totalmar's contemplation at the time of entering the contract, the COA would have provided for six fixtures, rather than two definite and four optional fixtures. Totalmar were not prepared to commit to six definite fixtures from the outset as they knew that their liability would be potentially for all six fixtures, if they were to act in breach.

12. The option clause in the COA permitted Totalmar to decide after the first two fixtures whether it could perform the remaining four. It was a provision that permitted Totalmar to see how the first two fixtures were working before they committed to the remaining

four. Totalmar clearly knew that once the option clause was exercised, they would be liable for all losses in the event of their subsequent non-performance.

13. Once Totalmar had elected to exercise the provisions in this clause, by nominating the vessel for the first shipment under the COA option, they were contractually obliged to nominate all four shipments in January. In effect the clause is an "all or nothing" provision. Even though Totalmar's breach occurred before the first shipment, when they failed to load a cargo onto the nominated vessel, it is clear that Totalmar are liable for the losses ABS Breakbulk suffered in respect of all four fixtures, since damages should be assessed by reference to the end of the shipment period (i.e. the whole option period of the COA).

**Application of the "NOEL BAY"**

14. Having set out how damages should be calculated under English law I turn now to consider the case relied on by Totalmar. The Defendant relies on the case of the "NOEL BAY" and quotes the following from the Judgment:

> *"the owners are entitled to be placed in the position financially as they would have enjoyed if the contract had not been broken, that involved a comparison of the money they would have earned, less expenses, on the contract voyage with the money they in fact earned less expenses, on the substitute voyage".*

15. In the first part of this sentence, the Judge confirms the position under English law. As a result it is clear that ABS Breakbulk are entitled to be put in a position financially that they would have been in had Totalmar complied with their obligations under the COA and performed all four fixtures under the elected option.

16. Given that Totalmar failed to load cargo after nominating a vessel from ABS Breakbulk, ABS Breakbulk could not perform the voyage. Furthermore there was simply no substitute voyage or substitute cargo to load. ABS Breakbulk were therefore not in a position to mitigate their losses, as quite simply they could not be mitigated. In any event the quantum of ABS Breakbulk's claim takes into account deductions for expenses (see below at paragraph 21).

17. In the "NOEL BAY" owners claimed hypothetical damages from charterers for the profit they would have made on a voyage had it been performed, together with demurrage which again would have been incurred had the voyage been performed. In that case it was held on appeal that the owners were entitled to only their lost profits, not to the expenses, demurrage etc.

18. The demurrage claimed by ABS Breakbulk is in relation to a voyage which was actually performed. The vessel, "GO STAR", was on demurrage at Shanghai for a period of 0.55903 days and pursuant to the terms of the COA, ABS Breakbulk are entitled to claim US$20,963.63 in respect of this period.

19. The "NOEL BAY" does not assist in this case, other than to reconfirm that under English law ABS Breakbulk are entitled to be placed in the position that they would have been in

had Totalmar not acted in breach of the COA and therefore are entitled to recover as damages their potential profit, together with any outstanding claims in relation to the fixtures already performed.

**Calculation of Quantum**

20. With regard to how ABS Breakbulk have calculated the damages which arise as a result of Totalmar's breach of its obligations, they have done so on the basis of the rates of a comparable vessel which was offered to ABS Breakbulk at that time at a rate of US$40,000 per day with an estimated intake of 470 pieces of pipes under/on deck.

21. As can be seen in ABS Breakbulk's damages calculation (attached). The likely income on that vessel was US$4,012,558 less total expenses in the sum of US$2,853,497.56 which leaves an estimated total profit of US$1,159,060.44 on each of the option fixtures.

22. Since damages are due for the whole of the COA shipment period, Totalmar are liable for Owners' loss of profits for all four shipments which Owners calculate to be US$4,636,241.76.

**London Arbitration Proceedings**

23. ABS Breakbulk's claim in the arbitration amounts to US$4,758,660.78, it is therefore appropriate that ABS Breakbulk are fully secured for this sum.

24. Given that ABS Breakbulk anticipate making a full recovery in the London arbitration of (i) their loss of profits of US$4,636,241.76; (ii) demurrage of US$20,963.63; (iii) deadfreight of US$61,449.39 and (iv) tally expenses in the sum of US$40,006.00, the level of security sought under the Rule B attachments should remain at its current level.

25. The additional sums claimed for demurrage, deadfreight and tally expenses relate to voyages which have been performed pursuant to the COA and which are due and owing. As far as ABS Breakbulk are aware they are not in dispute albeit that the Defendant has repeatedly delayed service of their defence submissions in the London arbitration.

26. I would therefore respectfully ask that the motion by the Defendant to reduce the amount of security be dismissed, where it is clear that Plaintiff ABS Breakbulk is entitled to these sums under English law, being the law of the COA and the law and jurisdiction where this dispute will be resolved.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: London, England
August 22, 2008

_____
MARK TERENCE O'NEIL

LONDON-4757852.5-ADOMINGU

Declaration of Mark Terence O'Neil,
London Solicitor, in Opposition

# EXHIBIT 1

