CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
ABS BREAKBULK SERVICES GMBH
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ABS BREAKBULK SERVICES GMBH,

                Plaintiff,

                                                         08 CV 4997 (JSR)

   v.

TOTALMAR NAVIGATION CORP.,

                Defendant.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A REDUCTION IN THE AMOUNT OF SECURITY

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………..………....…ii

TABLE OF AUTHORITIES …………………………………………..................iii

PRELIMINARY STATEMENT..…………………………..………….....…………1

THE FACTS……………………………………..............................................……2

LEGAL ARGUMENT……………………………………………………………...2

    I.      PLAINTIFF ABS BREAKBULK HAS MET THE
REQUIREMENTS OF SUPPLEMENTAL RULE B
FOR AN ORDER OF MARITIME ATTACHMENT……………………2

    II.     AN INQUIRY INTO THE VAILIDITY OF THE MARITIME
ATTACHMENT IS SUBJECT TO A PRIMA FACIE STANDARD,
AND THIS IS ESPECIALLY SO, WHEN THE MERITS OF THE
UNDERLYING CLIAM WILL BE DECIDED BY LONDON
ARBITRATORS IN ACCORDANCE WITH ENGLISH LAW…………3

    III.    THE DEFENDANT IS REQUIRED TO DEMONSTRATE
"GOOD CAUSE" FOR A REDUCTION OF THE SECURITY
AS PROVIDED FOR IN THE PROCESS OF MARITIME
ATTACHMENT……………………………………………………………..6

    IV.    THE DEFENDANT, TOTALMAR, HAS NOT SHOWN "GOOD
CAUSE" FOR REDUCTION OF THE SECURITY PROVIDED
FOR IN THE PROCESS OF MARITIME ATTACHMENT…………...10

CONCLUSION ……………….…………….......................................................…14

# TABLE OF AUTHORITIES

**CASES**                                                                                               **PAGE**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
 460 F.3d 434, 438, 445, 446, 447, 448 (2d Cir. 2006)..........................2, 3, 4, 5

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd,
 2005 U.S. Dist. LEXIS 22409, * 5 (S.D.N.Y. Oct. 3, 2005).......................8, 9

Dongbu Express Co. Ltd. v. Navios Corp.,
 944 F. Supp. 235, 237 (S.D.N.Y. 1996)...............................................8

Flame Maritime Limited v. Hassan Ali Rice Exp. Co.,
 2007 U.S. Dist. LEXIS 64470, *4 (S.D.N.Y. Aug. 31, 2007).........................9

Glory Wealth Shipping Serv. v. Five Ocean Corp.,
 2008 U.S. Dist. LEXIS 60967, *18 (S.D.N.Y. Aug. 1, 2008).........................8

Rice Co. v. Express Sea Transport Corp.,
 2007 U.S. Dist. LEXIS 84300, *2, *8, *9 (S.D.N.Y. Nov. 15, 2007).......5, 7, 8, 9

Ronda Ship Management, Inc. v. Doha Asian Games,
 511 F. Supp. 399, 403, 406 (S.D.N.Y. 2007).........................................4, 9

Sea Transpoprt Contractors Ltd v. Industries Chemiques du Senegal,
 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006)..............................................8

Sixteen Thirteen Marine S.A. v. Congentra A.G.,
 2008 U.S. Dist. LEXIS 56271, *19 - *20, *29 (S.D.N.Y. July 25, 2008)...5, 6, 8, 9

T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,
 415 F. Supp. 2d 310, 316 (S.D.N.Y. 2006).............................................5

Tide Line, Inc. v. Eastrade Commodities, Inc.,
 2006 US Dist. Lexis 95870, *14 (S.D.N.Y. Aug. 15, 2006)..........................4

Transportes Navieros y Terrestes v. Fairmount Heavy Transp.,
 2007 U.S. Dist. LEXIS 50260, *4, * 19 and * 20 (S.D.N.Y. July 6, 2007).........4

Ullises Shipping Corp. v. FAL Shipping Co.,
 415 F. Supp. 2d 318, 322-23& n. 37 (S.D.N.Y. 2006)................................4

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,
 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006).............................................2

**STATUTES and RULES**

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims, Rule B.................................................................................................1, 2, 3, 4, 5, 10

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims, Rule E.................................................................................................2, 4

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims, Rule E(4)..............................................................................................4

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims, Rule E(4)(f)...........................................................................................4

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims, Rule E(6)..............................................................................................6, 7, 8


**OTHER AUTHORITIES**

<u>Hadley v. Baxendale</u>,
    [1854] 9 EXCH 341.............................................................................13

<u>Hall v. Pim</u>,
    [1928] 30 Lloyd's Rep. 159.................................................................13

<u>SIB International SRL v. Metallgesellschaft Corp.</u>,
    [1989] 1 Lloyd's Rep 361 (Court of Appeal 1988)...........................11, 13

## **PRELIMINARY STATEMENT**

This Memorandum of Law is presented on behalf of the Plaintiff ABS BREAKBULK SERVICES GMBH (hereinafter "ABS Breakbulk") in opposition to the motion of Defendant TOTALMAR NAVIGATION CORP. (hereinafter "Totalmar"), whereby Totalmar seeks an Order reducing the amount of security provided for in the Process of Maritime Attachment and Garnishment, which was issued by this Court on May 30, 2008. With this Opposition, the Plaintiff ABS Breakbulk respectfully submits that the Defendant Totalmar's motion is flawed in several respects.

Initially, it must be noted that Defendant Totalmar concedes that the Plaintiff ABS Breakbulk met the requirements for a maritime attachment under Supplemental Rule B of the Federal Rules of Civil Procedure (hereinafter "Rule __"). In addition, the Defendant concedes that the merits of the Plaintiff's maritime claim, which is the basis for the attachment, are subject to arbitration in London under English law. Finally, the Defendant Totalmar concedes that the Plaintiff vessel Owner's claim for damages should be considered in the context of the basic proposition that the Owner is entitled to be placed in the same position, financially, as it would have enjoyed had the Defendant Totalmar not broken the contract. In other words, the Plaintiff ABS Breakbulk has properly asserted a *prima facie* valid maritime claim for which the Plaintiff ABS Breakbulk is entitled to recover damages.

Notwithstanding those elemental and undisputed points, Defendant Totalmar goes on to argue that the damages claimed by Plaintiff ABS Breakbulk are "grossly exaggerated." The argument presented by the Defendant Totalmar, however, rings hollow

1

because the Defendant has not established any sufficient "good cause" for the amount of the security to be reduced.

## THE FACTS

The facts to be considered in connection with the Plaintiff ABS Breakbulk's Opposition to Defendant Totalmar's Motion for a Reduction in the Amount of Security are more fully set forth in the accompanying Attorney's Affidavit of Owen F. Duffy, dated August 22, 2008 and the Declaration of Mark Terence O'Neil, an English solicitor. Rather than restate the facts fully herein, this Memorandum of Law will make reference to, and will discuss as appropriate, the facts set forth the accompanying Attorney's Affidavit. Citation to the Attorney's Affidavit will refer to "Duffy Affidavit at ¶ _," and citation to the Mark Terence O'Neil Declaration will refer to "O'Neil Declaration at ¶ _."

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF ABS BREAKBULK HAS MET THE REQUIREMENTS OF SUPPLEMENTAL RULE B FOR AN ORDER OF MARITIME ATTACHMENT

In order to obtain an attachment, apart from satisfying the filing and service requirements of *Rules B* and *E*, the plaintiff must show that 1) it has a *valid prima* facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006).

2

In the case at hand, the Defendant Totalmar makes no argument that the requirements for a Rule B attachment have not been met. As set forth in the Verified Complaint, the Plaintiff ABS Breakbulk asserts a claim for breach of a contract of affreightment (hereinafter "COA") and, therefore, Plaintiff has a *valid prima* facie admiralty claim against the defendant. *See*, Verified Complaint at ¶ 12. The Plaintiff has alleged that Totalmar is a foreign corporation that cannot be found within the Southern District of New York, and the Defendant has not asserted that it could be found in the District. The defendant's property has, and still may be, found within the district in the form of electronic funds transfers (hereinafter "EFTs"), and the Defendant does not assert otherwise. Finally, it has been alleged that there is no statutory or maritime law bar to the attachment and the Defendant has not asserted any bar to the attachment.

### POINT II

**ANY INQUIRY INTO THE VALIDITY OF THE MARITIME ATTACHMENT IS SUBJECT TO A PRIMA FACIE STANDARD AND THIS IS, ESPECIALLY SO, WHEN THE MERITS OF THE UNDERLYING CLAIM WILL BE DECIDED BY LONDON ARBITRATORS IN ACCORDANCE WITH ENGLISH LAW**

In Aqua Stoli, the Court of Appeals rejected the notion that the district courts are to engage in a broad inquiry into the validity of a maritime attachment on a motion challenging the validity of the attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 446 (2nd Cir. 2006). The Aqua Stoli Court noted that the question presented on appeal was "to what extent the district court may require a showing by the plaintiff beyond the simple fact that the textual requirements of Rule B have been met." 460 F. 3d at 438. When it answered that question, the Court of Appeals emphasized that

"Rule B specifies the sum total of what must be shown for a valid maritime attachment" and held that a "fact intensive inquiry" was "improper" at a Rule E hearing. 460 F.3d at 447 & 448.

In Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 US Dist. Lexis 95870 (S.D.N.Y. Aug. 15, 2006), Chief Judge Wood found that the holding and rationale in Aqua Stoli "strongly undermine[s] the standard, stated in a number of cases, that the hearing pursuant to Supplemental Rule E(4)(f) is intended to 'make a preliminary determination whether there were reasonable grounds for issuing the [attachment].'" *Id.* at *14 (*citing and quoting* Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318, 322-23& n. 37 (S.D.N.Y. 2006) (internal quotation omitted)). Judge Wood has thus interpreted "valid prima facie admiralty claim" to mean no more than a proper Verified Complaint and concluded that in order to show that it has a *prima facie* claim, a plaintiff seeking a maritime attachment need not provide any supporting evidence; its complaint should suffice. The prima facie standard is, therefore, a pleading requirement and not an evidentiary standard. Ronda Ship Management, Inc. v. Doha Asian Games, 511 F. Supp. 399, 403 (S.D.N.Y. 2007); *see also*, Transportes Navieros y Terrestes v. Fairmount Heavy Transp., 2007 U.S. Dist. LEXIS 50260, at *4 (S.D.N.Y. July 6, 2007) (stating that "maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing").

The limitation on broad inquiries at a Rule E hearing is even more forceful in circumstances where the merits of the underlying claim will adjudicated in another forum. For this case, the district court needs to bear in mind that the merits of the Plaintiff's claim and the merits of the claim for damages will be arbitrated in London and

4

governed by English law. The maritime contract between the plaintiff ABS Breakbulk and Defendant Totalmar, dated December 7, 2007, provides at Box 25 that any disputes arising out of the maritime contract shall be governed by English law and shall be referred to arbitration in London. *See*, Verified Complaint at ¶ 15; *and see*, Defendant's Memorandum of Law at page 2, noting: "[t]he merits of this matter are subject to arbitration at London under English law, and are not before this Court."). Indeed, the Plaintiff ABS Breakbulk has already presented its Claims Submissions, with supporting documents, to the London arbitrators and the London arbitration is underway and proceeding. *See*, Duffy Declaration at ¶ 12, Exhibit 7.

The merits of the Plaintiff's claim for damages arising from the cancellation of shipments by Defendant Totalmar presents questions of contract law that are for the London arbitrators to decide, and do not present questions for this court. *See,* Rice Co. v. Express Sea Transport Corp., 2007 U.S. Dist. LEXIS 84300, at *2 (S.D.N.Y. Nov. 15, 2007) (stating that "[c]ourts in a maritime attachment action are not permitted to make substantive determinations on the plaintiff's underlying claim, since '*Rule B* specifies the sum total of what must be shown for a valid maritime attachment.'") (*quoting* Aqua Stoli, 460 F.3d at 447); *see also,* T & O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 316 (S.D.N.Y. 2006) (finding that the "substantive legal question . . . will be decided under English law in the arbitration and is not a question that this Court should or will resolve").

Recently, in Sixteen Thirteen Marine S.A. v. Congentra A.G., the defendant moved to vacate a process of attachment or, alternatively, to reduce the amount of the

5

attachment pursuant to Rule E (6). 2008 U.S. Dist. LEXIS 56271 (S.D.N.Y. July 25, 2008). When considering the motions, Judge Baer observed:

> "[i]t appears to this Court that a "fact-intensive inquiry" into the substance of STM's claim would be improper here, in part, too, because this Court ought not to encroach upon the province of the arbitrators in London who will ultimately decide the merits."

See, id. at *19 - *20.

In the circumstances of this case, it is sufficient that ABS Breakbulk has met its burden of stating a *prima facie* admiralty claim for damages against Defendant Totalmar. The Court need only look to the Complaint to determine whether Plaintiff ABS Breakbulk has pled a proper claim for damages. For the purposes of the Attachment in this case, the Plaintiff ABS Breakbulk has pled a proper claim for loss of income as consequence of Totalmar's failure to ship the cargoes that it had contracted to ship.

### POINT III

### THE DEFENDANT IS REQUIRED TO DEMONSTRATE "GOOD CAUSE" FOR A REDUCTION OF THE SECURITY AS PROVIDED FOR IN THE PROCESS OF MARITIME ATTACHMENT

Separate and apart from the fact that Plaintiff ABS Breakbulk has a *prima facie* valid claim for damages, proper examination of the Defendant's argument for a reduction of the security sought in the Process of Maritime Attachment must be made with reference to the governing, and more specific, Supplemental Rule of Federal Civil Procedure. The governing Rule, which is entitled Reduction or Impairment of Security, provides as follows:

> Whenever security is taken the court may, on motion and hearings, for <u>good cause shown</u>, reduce the amount of the security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.

Fed. R. Civ. P., Supplemental Rules for Admiralty and Maritime Claims, Rule E (6). (emphasis added).

Any plain reading of the Rule demonstrates that the Court has discretion to either reduce or increase the amount of the security sought in the Process of Attachment, but only in such circumstances when there is <u>good cause</u> shown.

In its Motion for reduction of the security, the Defendant Totalmar has not cited to any judicial precedent of the U.S. courts to clarify what is meant by good cause shown nor has the Defendant Totalmar presented any specific argument that it has shown good cause for its application. On the contrary, the Defendant Totamar simply presents an abstract claim that the damages sought by the Plaintiff ABS Breakbulk are "speculative and grossly exaggerated," with nothing more than unsupported arguments that go to substantive questions and, for most the part, rely on an English case that is very much factually distinguishable from the case at hand. The fact of the matter is that Defendant Totalmar's argument against the damages sought is nothing more than wishful, or speculative, thinking on the part of Totalmar. Indeed, the argument is devoid of any legal analysis of the "good cause" standard.

In <u>Rice Co. v. Express Sea Transp. Corp.</u>, Judge Pauley set forth the standard now being used in the Southern District for motions to reduce the amount of an attachment. 2007 U.S. Dist. LEXIS 84300 (S.D.N.Y. Nov. 15, 2007). Judge Pauley stated:

> 'Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given.' *Fed. R. Civ. P.*

> *Supp. Rule E(6)*. While "the plaintiff need not prove its damages with exactitude," **the court must find that the plaintiff's damages estimate is "not frivolous."** Dongbu Express Co. Ltd. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996).

Id. at *8 - *9

Consistent with the standard articulated in Dongbu Express and Rice Co, Judge Preska required indisputable evidence that the claim was frivolous before she granted a motion to reduce an attachment pursuant to the "good cause" standard. Transportes Navieros Y Terrestes v. Fairmount Heavy Transp. N.V., 2007 U.S. Dist. LEXIS 50260, *13, at * 19 & 20 (S.D.N.Y. July 6, 2007). *See also*, Glory Wealth Shipping Serv. v. Five Ocean Corp., 2008 U.S. Dist. LEXIS 60967, *18 (S.D.N.Y. Aug. 1, 2008) ("For purposes of the Attachment, it is sufficient that Glory Wealth's Damage Calculation is not frivolous.").

For the case at hand, the Defendant Totalmar has not cited to any precedent from the Southern District of New York in support of its argument that the security should be reduced. The reason for that is because the cases where the security has been reduced are completely inapposite to the claim presented by Plaintiff ABS Breakbulk and, therefore, the existing precedent does not support the Defendant's argument.

For one example, in Sea Transpoprt Contractors Ltd v. Industries Chemiques du Senegal, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006), Judge Casey found "good cause" to reduce the amount of a maritime attachment, but only because the plaintiff's damages were limited to the term of the underlying contract. For another, in Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd, 2005 U.S. Dist. LEXIS 22409, * 5 (S.D.N.Y. Oct. 3, 2005), Judge Buchwald reduced the plaintiff's attachment, but only because the plaintiff revised its claim for loss of profits based on claims advanced by the head Owner of the

8

vessel against Daeshin Shipping. Judge Buchwald's decision in <u>Daeshin Shipping</u> is notable for the point that the court did not accept the defendant's argument that plaintiff failed to introduce sufficient support for its damages and, also, the Court declined to apply the defendant's proposed method for calculating the damages. Instead, Judge Buchwald concluded that "reasonable" estimates of damages were sufficient for to maintain an attachment of the defendant's property. <u>Id.</u> In <u>Flame Maritime Limited v. Hassan Ali Rice Exp. Co.</u>, Judge Pauley reduced an attachment because the attachment included interest, whereas the underlying Judgment of the Pakistani High Court had specifically excluded interest and the plaintiff could not collect more than had been awarded in Pakistan. 2007 U.S. Dist. LEXIS 64470, *4 (S.D.N.Y. Aug. 31, 2007). Finally, in <u>Sixteen Thirteen Marine S.A. v. Congentra A.G.</u>, Judge Baer reduced the attachment, but only because a portion of the damages claimed were contingent and, therefore, little more than "wishful thinking." 2008 U.S. Dist. LEXIS 56271, * 27.

By contrast, in <u>Ronda Ship Mgmt. v. Doha Asian Games Organising, Comm.</u>, Judge McMahon agreed with one argument put forward by the defendant in that case to the extent that the plaintiff's complaint does not allege a breach of this contract. 511 F. Supp. 2d 399 (S.D.N.Y. 2007). However, and more relevant to the case at hand, the defendant argued that claims for loss of reputation were unreasonable as the charter party expressly precluded the recovery of consequential and indirect damages. <u>Id.</u> at 406. In this regard, Judge McMahon stated, "[i]t is not for this Court to decide whether incidental and consequential damages are recoverable under the charter parties at issue, but rather for the English court to resolve in due course." Id. As such, because the plaintiff's

9

claims were not frivolous, Judge McMahon did not reduce the attachment in respect of the claims for loss of reputation.

To conclude on this point, the weight of authority from the Southern District of New York requires the movant to demonstrate "good cause" when seeking to have an attachment reduced. "Good cause" is not found unless the movant demonstrates that the damage estimates are frivolous in the sense that they are clearly barred by contractual limitations or they exceed what the plaintiff may reasonably expect to be awarded in arbitration in London.

## POINT IV

### THE DEFENDANT, TOTALMAR. HAS NOT SHOWN "GOOD CAUSE" FOR REDUCTION OF THE SECURITY AS PROVIDED FOR IN THE PROCESS OF MARITIME ATTACHMENT

The Plaintiff ABS Breakbulk has set forth a nonfrivolous claim in its Complaint. If this Court were to reduce the amount sought in the Process of Maritime Attachment but the London arbitrators later uphold Plaintiff's claims, the Plaintiff will have been unfairly deprived of the security Rule B was intended to confer while the Defendant Totalmar will have had the possibility to dissipate its assets. Under such circumstances, this Court should not reduce the amount of the Process of Maritime Attachment in this case, and allow the London arbitration to proceed where Defendant Totalmar will be free to seek a reduction in the amount alleged and the determination can be made, as was agreed by the parties, by a panel of arbitrators in London pursuant to English law. Therefore the motion for a reduction should be denied.

In the case at hand, Plaintiff's allegations in the Complaint were as follows:

> 11.    Further, defendant TOTALMAR exercised the option for the four (4) additional shipments by nominating a third cargo for shipment under the maritime contract.
>
> 12.    In breach of the maritime contract, defendant TOTALMAR then failed to produce any cargo for the remaining four (4) shipments in January of 2008 having exercised the option for the four (4) additional shipments.
>
> 13.    As nearly as can now be estimated, this resulted in a total lost profit to plaintiff ABS BREAKBULK of $4,636,241.76.

Rather than dispute that Defendant Totalmar did in fact breach the contract by failing to produce any cargo for the remaining voyages, Totalmar argues that Plaintiff's calculations should include setoffs because "ABS has not provided any evidence to show that it had in fact time chartered suitable vessels to perform the option shipments 4, 5 and 6." *See*, Defendant's Memo of Law at page 4.

The Defendant's logic is circular and unavailing. Had ABS Breakbulk time chartered suitable suitable vessels to perform these shipments, then ABS Breakbulk would have incurred additional damages. This is not in keeping with ABS Breakbulk's clear duty to mitigate its damages. In fact, the better standard is, as Defendant Totalmar admits is the English law, that the aggrieved party is "entitled to be placed in the same position, financially as they would have enjoyed if the contract had not been broken." Defendant's Memo of Law at page 5, *citing to* SIB International SRL v. Metallgesellschaft Corp., [1989] 1 Lloyd's Rep 361 (Court of Appeal 1988).

In the case at hand, Plaintiff ABS Breakbulk has not simply asked for an attachment of its expected gross income of $3,989,808.00 per voyage, but has instead, as Totalmar admits, "deducted certain expenses saved of $2,853,497.56 to arrive at a profit

11

of $1,159,060.44 per voyage." Defendant's Memo of Law at page 4. Defendant Totalmar argues that Plaintiff ABS Breakbulk has not "given credit to Totalmar for any profit that it made on the third option shipment." However, Defendant Totalmar has not demonstrated that the Plaintiff made any profit whatsoever on this shipment. Moreover, Plaintiff should not be put in the position of assuming that it had it gone out on the market and chartered vessels for the option shipments that Defendant Totalmar was clearly not going to supply cargoes for, it would have made any additional profit at all.

In sum, the Defendant Totalmar is attempting to cloud the issue that it was the party that breached the contract at issue, which breach resulted in lost profits to the Plaintiff ABS Breakbulk in an amount, as nearly as can now be estimated, of $1,159,060.44 per voyage. If Plaintiff ABS Breakbulk could have obtained additional cargoes for which to charter vessels, there is no evidence that ABS Breakbulk would not have simply increased its profits further, chartering new vessels as well as the vessels it would have chartered for Defendant Totalmar. There would have been other vessels available for such opportunities. As such, the amounts claimed should not be reduced.

Finally, Defendant Totalmar resorts to citing to the English law that will be applied by the London arbitration panel in this matter. It is noteworthy that Plaintiff has included essentially the same damages, with some additions for Tally expenses and deadfreight, from its Complaint as are in its Points of Claim submitted in London arbitration. *Compare*, Wanchoo Declaration Exhibits 1 and 3. Defendant, rather than address the issue in London arbitration, simply submits a single English case to this Court (which, in any event, is inapplicable to the case at hand) and does not submit a declaration from an English solicitor, despite the fact that the arbitration proceedings

12

have commenced, and English solicitors for the Defendant have requested more than one extension of time for it to respond to the allegations made in Plaintiff ABS Breakbulk's Points of Claim. *See*, Duffy Declaration, at ¶ 13; *and see*, O'Neil Declaration, at ¶ 25.

As is clearly shown in the supporting Declaration of Mark Terence O'Neil, the English case law, in fact, supports Plaintiff ABS Breakbulk's claims for its lost profits in the amounts set forth in the Complaint in this matter. Mr. O'Neil's Declaration sets forth the basic principles for damages under English law, namely that a Plaintiff may recover for damages that were "liable to result" from a breach of a contract. *See*, O'Neil Declaration at ¶ 5, *citing* Hadley v. Baxendale, [1854] 9 EXCH 341. Further, a Plaintiff is entitled, under the English law, to make a claim for lost profits. *See*, O'Neil Declaration at ¶ 7, *citing* Hall v. Pim, [1928] 30 Lloyd's Rep. 159. Finally, Mr. O'Neil applies the case law to the facts at issue in the London arbitration proceedings and demonstrates that Plaintiff ABS Breakbulk is entitled to allege damages in the amount claimed here and in London arbitration under the English law. *See*, O'Neil Declaration at ¶'s 9 – 13.

In addition, the Declaration of Mr. O'Neil discusses the case of "NOEL BAY" (also know as SIB International SRL v. Metallgesellschaft Corp., [1989] 1 Lloyd's Rep 361 (Court of Appeal 1988)) to demonstrate that the damage allegations of Plaintiff ABS Breakbulk, are actually supported by that case's statement that the damaged party is "entitled to be placed in the position financially as they would have enjoyed if the contract had not been broken." *See*, O'Neil Declaration at ¶ 14, citing "NOEL BAY"; *and see*, O'Neil Declaration at ¶ 19.

In sum, Defendant Totalmar is essentially arguing that Plaintiff ABS Breakbulk's "actual lost profits" are less than those claimed in the London arbitration and in the case

at hand.  *See*, Defendant's Memo of Law at page 5 (emphasis in original). However, Defendant Totalmar has not submitted any good cause for this Court to believe that, had it complied with its obligations under the charter party for four additional voyages, Plaintiff ABS Breakbulk would not have made the profits that it claims here and in London arbitration, and would not *actually* now be over $4 million richer.

Under such circumstances, it is clear that Plaintiff's claims for damages are valid under English law, are therefore not frivolous under the federal maritime law of the United States of America, and that the Defendant Totalmar has not demonstrated good cause for a reduction in the amount of security.  Therefore the Process of Maritime Attachment should not be reduced.

## CONCLUSION

For all of the reasons stated above, individually and collectively, the Defendant Totalmar's Motion for a Reduction in the amount of the Process of Maritime Attachment must be denied by this Court because, other than general and unsupported complaints of speculation and exaggeration, the Defendant Totalmar has not demonstrated "good cause" for a reduction of the attachment.

Dated: Port Washington, New York
       August 22, 2008

                                         CHALOS, O'CONNOR & DUFFY, LLP
                                         Attorneys for Plaintiff,
                                         ABS BREAKBULK SERVICES GMBH

                  By: _____
                       Owen F. Duffy (OD-3144)
                       George E. Murray (GM-4172)

366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605